**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**PERLA ENRIQUEZ BACA, as**
**the Personal Representative of**
**AMELIA BACA, deceased,**

       **Plaintiff,**

**vs.**                          **Cause No.** _____

**JARED COSPER, in his individual**
**capacity, THE CITY OF LAS CRUCES, and**
**LAS CRUCES POLICE CHIEF MIGUEL DOMINGUEZ,**

       **Defendants.**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS
## AND THE WRONGFUL DEATH OF AMELIA BACA

    **COMES NOW** the Plaintiff Perla Enriquez Baca, as personal representative of Amelia

Baca, deceased, by and through her attorneys of record, The Bregman Law Firm, P.C. (Sam

Bregman), and Daniela Labinoti, P.C. (Daniela Labinoti) and brings this Complaint for violation

of Amelia Baca's civil rights under the Fourth and Fourteenth Amendment to the United States

Constitution and 42 U.S.C. § 1983.  In support of her Complaint, Plaintiff states as follows:

### Preliminary Statement

    On April 16, 2022, Defendant Jared Cosper, acting in the course and scope of his

employment as a Las Cruces police officer, responded to Amelia Baca's residence following a

dispatch call reporting a 75-year old female suffering from dementia who may have not taken her

medication and was threatening her family members.  Officer Cosper murdered Amelia Baca

when, without provocation and after he shouted commands for approximately 38 seconds in a

language Ms. Baca didn't understand, he shot her to death.  Officer Cosper made no effort to

administer life saving techniques to Ms. Baca, and with deliberate indifference, left Ms. Baca to die.

### Jurisdiction and Venue

This Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343.  The court has personal jurisdiction over the parties and venue is proper in this district, as Defendants Cosper and Dominguez are New Mexico residents.  The incident that gives rise to this action occurred in New Mexico.

### Parties

1.      Plaintiff Perla Enriquez Baca ("Plaintiff") is a resident of Doña Ana County, New Mexico and is one of Amelia Baca's five daughters.  Plaintiff has been duly appointed the personal representative for the estate of Amelia Baca to investigate and bring claims against those agencies and individuals responsible for the wrongful death of Amelia Baca.

2.      The decedent, Amelia Baca ("Baca"), was a decades long resident of the State of New Mexico, and resided in the County of Doña Ana at the time of her death.

3.      Upon information and belief, Defendant Jared Cosper ("Cosper") is a resident of Doña Ana County, New Mexico.  At all times relevant to this Complaint, Cosper was acting under color of law within the course and scope of his employment as a law enforcement officer and police officer of the Las Cruces Police Department.

4.      Upon information and belief, the City of Las Cruces ("City") is a municipal corporation located in Doña Ana County, New Mexico and governs and operates the Las Cruces Police Department ("LCPD").  At all times relevant to this Complaint, the City employed and was charged with exercising direct supervisory control over Cosper.

5.      At all material times, Miguel Dominguez ("Dominguez") was the Chief of the Las Cruces Police Department, with supervisory authority over all police officers and operations of

the Las Cruces Police Department, including responsibility for recruiting, hiring, training, disciplining, and managing all officers employed and certified by the City of Las Cruces.  During all times relevant to this Complaint, Dominguez was responsible for exercising direct supervisory control over Cosper.

### Factual Allegations

6.      On or about April 16, 2022, LCPD Officer Jared Cosper was on duty and working in his capacity as a Las Cruces police officer.

7.      Following a dispatch call reporting a 75-year old female suffering from dementia who may have not taken her medication and was threatening her family members, Cosper, an officer with reportedly over 70 hours of Crisis Intervention Training ("CIT"), responded to Baca's residence.

8.      LCPD policy with regard to assisting the mentally ill states the LCPD "shall call upon available resources to help bring a desirable resolution to incidents involving the mentally ill in a responsible and thoughtful manner." *LCPD GO-245.*

9.      Cosper approached Baca's front door, and asked two of her family members to exit the residence, which they did.  Upon their departure, they thanked Cosper and asked him to "please be very careful with her."

10.     Cosper then saw Baca appear in her doorway. Baca was holding a knife in each of her hands, both pointed down toward the floor.  Without a single attempt to calm Baca, speak to her in a quiet, non-threatening manner, or provide reassurance that the police were there to help, Cosper immediately pointed his firearm at Baca and started shouting at her to "Set it down!!" and "Drop the knife!!".

11.     Baca was a Spanish speaker, and she had no idea what Cosper was saying.

12.     As clearly reflected on Cosper's lapel video of this incident, Baca appeared confused and answered Cosper in Spanish, while she looked around her trying to understand why and what he was yelling at her.

13.     As he continued to shout and swear at her in English, Baca put both knives in her right hand and looked to her right.  She then gestured to Cosper with her open left hand to lower his weapon and/or his high beam flashlight he had pointed in her eyes.

14.     Cosper pointed to the ground with his left hand as he continued to shout commands at Baca in English.

15.     Baca appeared to interpret Cosper's pointing to the ground in front of him as a command to come over to where he was, and she took a step forward.

16.     As he shouted "Put the fucking knife down!" Cosper shot Baca twice in the chest.

17.     Cosper shouted at Baca for approximately 38 seconds in a language she didn't understand before he shot her twice.[1]

18.     As a result of the two gunshots, Amelia Baca died.

19.     Throughout the entire incident with Cosper, Baca appeared confused and disoriented, and at no time did she take a single action that would demonstrate that she presented any reasonable probability of risk of actual danger to Cosper.

20.     At no time did Amelia Baca, a 75-year old woman with dementia, objectively pose any threat of deadly force to Cosper.[2]

---

[1] The short time between Cosper's arrival on scene and shooting Baca means that all of Cosper's actions preceding the shooting are "immediately connected" to Baca's death and must be considered in the reasonableness inquiry. *Bond*, 981 F.3d at 818; *Allen v. Muskogee*, 119 F.3d 837, 840-41 (10th Cir. 1997).
[2] "The reasonableness of [the officers'] actions depends both on whether the officers were in danger at the precise moment that they used force and on whether [their] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (footnote omitted).

21.     The lethal force that Cosper used upon Baca was unnecessary and excessive under the circumstances.  Clearly established Tenth Circuit case law provided an objective officer in Cosper's position notice that his conduct violated the Fourth Amendment.[3]

22.     As set forth in Las Cruces Police Department General Order 245.04 (Assisting Mentally Ill Persons), Cosper knew Baca was suffering from dementia, and yet he made no effort at any time to calm the situation, approach Baca in a quiet, non-threatening manner, ensure that backup officers are present before taking any action, or move slowly to avoid exciting Baca. Instead he did the exact opposite of every one of those, and Cosper executed Baca within 40 seconds of making contact with her.  The circumstances at issue in *Allen* and *Ceballos* are analogous to those at issue here. Officer Cosper shot and killed an emotionally distraught and suffering from dementia Baca within a minute of arriving on scene.

23.     Prior to engaging in his unlawful action, including the use of unnecessary deadly force on Baca, whom he knew was mentally ill and in need of assistance, Cosper had a duty to critically evaluate the facts upon which he should rely to support his actions, and to determine if such actions were necessary and in good faith under the totality of the circumstances.

24.     Cosper failed to exercise this duty.

25.     At all times, Cosper was an employee of the City and was acting in the course and scope of his employment.

26.     Cosper acted willfully, maliciously, in bad faith, and with reckless disregard of Baca's constitutionally protected federal rights.

27.     As a result of their failure to correct glaring deficiencies in their policies and procedures, in particular those regarding the use of force, the City and Dominguez are liable to Plaintiff under 42 U.S.C. § 1983.

---

[3] *Estate of Ceballos v. Husk,* 919 F.3d 1204, *Allen v. Muskogee*, 119 F.3d 837, 839-841 (10th Cir. 1997).

**Count I – Excessive Use of Force in Violation of Amelia Baca's**
**Fourth Amendment Rights and 42 U.S.C. §1983 (Cosper)**

28.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

29.     On April 16, 2022, Cosper's actions caused the untimely and unlawful death of Amelia Baca.

30.     Cosper shouted commands at Baca for less than a minute and in a language she didn't understand, and made absolutely no effort to deescalate the situation at any point, despite knowledge of her dementia and his professed 70 hours of CIT, instead shooting her twice in the chest and causing her death.

31.     In his deathly shooting of Amelia Baca, Cosper's use of deadly force was excessive, objectively unreasonable, reckless, and unnecessary.

32.     Baca did not threaten Cosper prior to being shot to death.

33.     Cosper made no attempt to provide aid or summon medical care to Baca following the shooting.

34.     Any reasonable officer in Cosper's position, having shot Baca twice in the chest, should have known that failing to check Baca's vitals or seek immediate medical attention could evince deliberate indifference to a serious medical need.  Instead, Cosper instructed another officer who had just arrived on scene to "pull her out" of the doorway, and then Cosper strode into Baca's residence, leaving her to die on the ground behind him.

35.     Cosper's actions as described in this Complaint are similarly egregious as described in *Allen v. Muskogee*, 119 F.3d 837, 840-41 (10th Cir. 1997) and its progeny of case law.

36.     Cosper's actions were intentional, willful, wanton, and in gross and reckless disregard of Baca's rights.

37.    Plaintiff is entitled to compensatory and punitive damages against Cosper, along and attorneys' fees and costs of this action.

**Count II – Deprivation of Life Without Due Process in Violation of Amelia Baca's Fourteenth Amendment Rights and 42 U.S.C. §1983 (Cosper)**

38.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

39.    On April 16, 2022 Cosper was acting as an employee of the City and was acting in the course and scope of his employment.

40.    At the time of her death, Baca had a clearly established constitutional right under the Fourteenth Amendment to not be deprived of her life without due process of law.

41.    Cosper was responsible for placing Baca in her vulnerable state and engaging in activity that could produce foreseeable, rapid and deadly consequences.

42.    Cosper should have known that failing to check Baca's vital signs, perform CPR, or seek medical care when she was bleeding out as a result of Cosper's use of force could result in Baca's death, and his failure to administer a single recovery technique or attempt to assist Baca evinces deliberate indifference to Baca's serious medical need.

43.    Cosper acted with deliberate indifference by delaying assistance to Baca, or administering a single life saving technique himself, resulting in unnecessary and wanton infliction of pain on Baca.

44.    Cosper's actions were intentional, willful, wanton, and in gross and reckless disregard of Baca's rights.

45.    Plaintiff is entitled to compensatory and punitive damages against Cosper, along and attorneys' fees and costs of this action

**Count III – Municipal Liability under the Fourth Amendment and 42 U.S.C. § 1983 (City)**

46.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

47.    The City owes a duty of reasonable care in recruiting, hiring, and training its officers.  The City has failed to properly train its officers in use of force, and have failed to adequately address training and supervision issues, including their policies and procedures regarding de-escalation, assisting mentally ill persons, and the use of deadly force.  This failure on the City's part directly caused the unnecessary suffering and death of Baca, and her constitutional right to be free from the use of excessive force.

48.    Not a single appropriate recovery technique was attempted by Cosper, or upon information and belief any officer on scene, prior to the arrival of the ambulance.

49.    The acts or omissions of Cosper were the moving force behind and proximate cause of Baca's death.

50.    Because of the systemic deficiencies in training, supervision, and policies of the City, Baca died as a result of Cosper's unreasonable use of deadly force, in direct violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 as alleged in Count I of this Complaint.

51.    The wrongful death of Baca was a direct and predictable result of the City's failure to adequately train its officers in engaging with the mentally ill and use of force techniques, as well as the City's failure to supervise, investigate, and address deficiencies in the City's use of force practices.

52.    The City's above-described failure to adequately train officers, investigate and address violations in their policies and practices regarding assisting mentally ill persons, engaging with Spanish speakers, and the use of force, all of which caused the deadly battery and suffering of Baca at the hands of Cosper, and for which the City is liable under 42 U.S.C. § 1983.

53.    The City and Dominguez know that officers too often use excessive and deadly force in a manner that violates the Fourth Amendment and 42 U.S.C. § 1983.

54.     The City has failed to require that LCPD implement an objective and rigorous internal accountability system.  Force incidents, such as this subject incident, have not been properly investigated, documented, or addressed with corrective measures, ratifying the behavior of Cosper and other LCPD officers.

55.     The City and Dominguez's lack of adequate training, internal oversight and supervision, promotes an acceptance of unlawful use of deadly force and thereby contributed to the preventable death of Baca.

56.     As a direct and proximate result of Cosper's reckless and unlawful acts, Baca was wrongfully shot to death.

57.     As a direct and proximate result of Cosper's deliberate indifference to Baca's serious medical need and failure to provide care, Baca was left to die.

58.     Because Cosper was acting within the course and scope of his employment for the City when he engaged in the extreme behavior that caused Baca's death, and since Cosper's behavior is the direct result of the City's failure to train its officers, address and correct the deficiencies in their policies and procedures regarding the use of force, the City is liable under 42 U.S.C. § 1983.

59.     Plaintiff is entitled to compensatory damages as well as the costs of this action and attorneys' fees.

### Count IV –Supervisory Liability under the Fourth Amendment and 42 U.S.C. § 1983 (Dominguez)

60.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

61.     As Las Cruces Police Chief, Dominguez was at all times relevant to this Complaint personally responsible for overseeing the training and supervision of LCPD officers,

and implementing, upholding, and ensuring the compliance with LCPD's policies and procedures with regard to assisting the mentally ill and the use of deadly force.

62.    Due to Dominguez's failure to enforce LCPD policies and procedures regarding assisting mentally ill persons, engaging with non-English speakers, and use of force, coupled with inadequate training of Cosper, resulted in his deadly use of force against Baca, in violation of the Fourth Amendment and 42 U.S.C. § 1983 as alleged in Count I of this Complaint.

63.    Dominguez acted willfully, wantonly, recklessly, intentionally, and with deliberate indifference in ensuring adequate use of force training, and allowing policies and procedures in his department to go unchecked, which directly resulted in depriving Amelia Baca of her constitutional right to be free from the excessive use of force by Cosper while he was acting in the course and scope of his employment as a LCPD officer.

64.    Under these circumstances, Baca's wrongful death was a predictable consequence of Dominguez's deliberate indifference to the constitutional rights of City residents, for which Dominguez is liable in his individual capacity under 42 U.S.C. § 1983.

65.    Plaintiff is entitled to compensatory and punitive damages against Dominguez in his individual capacity, along with attorneys' fees and costs of this action.

## Jury Demand

66.    Plaintiff respectfully requests a trial by jury.

**WHEREFORE** Plaintiff respectfully requests that judgment be entered against the Defendants for all damages requested herein, costs of this action, and any other relief that the Court deems just and proper.

Respectfully submitted,

**THE BREGMAN LAW FIRM, P.C.**

By:_____

     Sam Bregman
     Attorneys for Plaintiff
     901 3rd Street NW, Suite A
     Albuquerque, NM 87102
     (505) 761-5700
     sam@bregmanlawfirm.com


- and -


**LAW FIRM OF DANIELA LABINOTI, P.C.**

By: _____

     Daniela Labinoti
     Co-Counsel for Plaintiff
     707 Myrtle Avenue
     El Paso, TX 79901
     (915) 581-4600
     (915) 581-4605
     Daniela@LabinotiLaw.com